**QUATTRONE ACCOUNTANTS, INC. and Philip P. Quattrone, Appellants,**

v.

**INTERNAL REVENUE SERVICE.**

No. 89–3386.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit Rule 12(6) October 26, 1989.

Decided Feb. 12, 1990.

Paul R. Yagelski, Pittsburgh, Pa., for appellants.

Gary R. Allen, Deborah Swann, Kenneth L. Greene, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for appellee.

Before HUTCHINSON and NYGAARD, Circuit Judges, and DUBOIS, District Judge.[*]

## OPINION OF THE COURT

NYGAARD, Circuit Judge

Debtor, Quattrone Accountants, Inc. (debtor) and Philip P. Quattrone appeal from the order of the district court affirming the bankruptcy court's determination that debtor is a responsible person who willfully failed to pay over federal employment taxes incurred by the United Dairy Farmers Cooperative Association (UDF) under 26 U.S.C. § 6672, and that the bankruptcy court had no jurisdiction to determine Philip Quattrone's tax liability under Section 6672. We will affirm.

I.

Debtor is a corporation that provided professional accounting services. Philip Quattrone is a part owner and principal officer of the debtor. In the late 1960's, UDF, which produced and marketed milk and cheese products, hired debtor to perform all of its accounting and financial activities. These activities included:

---

[*] Honorable Jan E. DuBois, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1) meeting with the president of UDF, Ernest Hayes, on an almost daily basis to discuss UDF finances;

2) calculating UDF's payroll and distributing paychecks;

3) receiving directly all of UDF's bills;

4) paying all of UDF's standard monthly bills by use of a signature stamp without prior approval;

5) making joint decisions with Hayes to pay debts outside of standard monthly payments;

6) preparing and filing UDF's federal, state and local tax returns;

7) procuring and managing all of UDF's loans.

In early 1980, UDF began its financial slide which culminated in filing for bankruptcy. First, the Department of Agriculture required UDF to modify its schedule of payments to suppliers. This change caused many creditors to be paid late. Soon, Pittsburgh National Bank called an $800,000 loan claiming it to be in default. In response, debtor, although assuring UDF that the loan was not in default, suggested that the alleged default could be cured by having UDF's members lend UDF two-thirds of one month's milk receipts. UDF and its members accepted this suggestion. Then, as a consequence of the members' loan to UDF, the Department of Agriculture brought suit against UDF for reasons not germane to this appeal and obtained a $1.2 million judgment.

About this time, the Internal Revenue Service (IRS) began investigating UDF. UDF owed the IRS $50,000 in withholding taxes. To cure the tax deficit, debtor formed a group of investors willing to lend UDF $250,000. The loan was supposed to cure the current liability as well as cover withholding taxes anticipated for the following four quarters. UDF put up $3.5 million in equipment as security. During the course of the following year UDF constantly questioned debtor whether the quarterly tax payments were being made. Debtor assured UDF that the withholding taxes were being paid. In late 1981, UDF told debtor to produce receipts to verify that the withholding taxes were being paid. The receipts did not correspond to the amounts due. In fact, the withholding taxes due for the quarters ending June 30, 1981 and September 9, 1981 were not paid. Consequently, UDF fired debtor.

In October, 1982, UDF filed a Chapter 11 bankruptcy petition. UDF listed withholding taxes due for the periods ending June 30, 1981 and September 9, 1981 as one of its debts. On January 1, 1984, the IRS assessed a 100% penalty against Philip Quattrone pursuant to 26 U.S.C. § 6672. Around March, 1985 the IRS assessed a 100% penalty against debtor pursuant to Section 6672. In September, 1986, debtor filed a Chapter 11 bankruptcy petition. The IRS then filed a proof of claim asserting its claim against debtor for UDF's unpaid withholding taxes pursuant to Section 6672. Debtor and Philip Quattrone objected; later, both filed a complaint in bankruptcy court requesting the court to determine the Section 6672 tax liability of each.

The bankruptcy court held that debtor was liable under Section 6672 as a responsible person who willfully failed to pay over UDF's withholding taxes. The court concluded that debtor was a responsible person because debtor operated as UDF's internal accounting department with the authority to pay bills, distribute payroll, and prepare and file all UDF tax returns all without *prior* approval of the UDF Board. The court concluded that debtor willfully failed to pay over the withholding taxes because debtor knew of the tax deficiencies, but failed to exercise its considerable influence on the Board of UDF to get them to pay the taxes, and because debtor obtained money specifically to pay withholding taxes, but used the money instead to pay off other creditors. Lastly, the bankruptcy court held that it had no jurisdiction to determine the tax liability of Philip Quattrone. The court examined 11 U.S.C. § 505(a)(1) and concluded that Section 505 permitted it to determine only the tax liabilities of a debtor or the estate, not of non-debtor thirdparties.

The district court affirmed the order of the bankruptcy court, 100 B.R. 235. The

district court agreed with the bankruptcy court that it had no jurisdiction over Philip Quattrone. The district court examined both 11 U.S.C. § 505(a)(1) and 28 U.S.C. § 1334 and concluded,

Congress did not intend to empower bankruptcy courts to consider any tax whatsoever, on whomever imposed, even though such tax liability might have some conceivable effect on the administration of the bankruptcy estate. To do so would, in effect, burden the bankruptcy courts with tax issues that are better suited for the tax courts.

Slip. op. at 8. The district court concluded that the bankruptcy court's findings were not clearly erroneous and that those findings supported the bankruptcy court's conclusion that debtor was liable under Section 6672. Debtor and Philip Quattrone then filed this timely appeal.

## II.

We have jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291. Our review of the district court "effectively amounts to review of the bankruptcy court's opinion in the first instance." *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir.1989). The bankruptcy court made two findings of ultimate fact:[1] whether debtor is a "responsible person" and whether debtor "willfully failed" to pay over taxes. When we review ultimate facts, we must accept the trial court's findings of basic and inferred facts unless they are clearly erroneous, but we exercise plenary review of "the trial court's choice and interpretation of legal precepts and its application of these precepts" to the basic and inferred facts. *Id.* We have plenary review of the bankruptcy court's decision regarding subject matter jurisdiction. *York Bank & Trust v. Federal Savings & Loan Ins. Corp.*, 851 F.2d 637 (3d Cir.1988); *In re Bobroff*, 766 F.2d 797 (3d Cir.1985).

## III.

Appellant Philip Quattrone argues that the bankruptcy court has jurisdiction over the question of his tax liability under Section 6672 pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 505.

Quattrone argues that Section 505 does not expressly limit the bankruptcy court to determining only a debtor's tax liability and, thus, it allows the court to decide his tax liability. The IRS argues that Section 505 prohibits the bankruptcy court from deciding Philip Quattrone's tax liability under Section 6672. We disagree with both arguments. We conclude that Section 505 does not address the situation presented before us and, therefore, neither limits nor grants jurisdiction here.

Although we agree with the IRS' assertion that Section 505 refers only to debtor tax liability, we disagree with the IRS that Section 505 limits the bankruptcy court's jurisdiction to determine tax liability to only debtors. *But see In re Brandt–Airflex Corp.*, 843 F.2d 90 (2d Cir.1988) (Section 505(a) does not confer bankruptcy court jurisdiction to determine the 26 U.S.C. § 3505 liability of a non-debtor); *United States v. Huckabee*, 783 F.2d 1546 (11th Cir.1986) (the jurisdiction of the bankruptcy court extends only to determinations of the tax liabilities of debtors, not non-debtors). The IRS further argues that the general grant of jurisdiction in Section 1334 does not expand Section 505's specific grant of jurisdiction and concludes that, when read together, Section 505 controls. We also disagree with this argument.

When we review how the language and purpose of Section 505 has evolved, we conclude that Section 505 was intended to *clarify* the bankruptcy court's jurisdiction over tax claims, not *limit* its jurisdiction only to debtors.

Section 505(a)(1) provides,

---

1. " 'Basic facts are the historical and narrative events' presented for the court's consideration." *Sharon Steel*, 871 F.2d at 1223 (quoting *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102–03 (3d Cir.1981)). Inferred facts "are drawn from basic facts and are permitted only when, and to the extent that, logic and human experience indicate a probability that certain consequences can and do follow from the basic facts." *Id.* An ultimate fact is a legal concept with a factual component and is usually expressed in the language of a standard enunciated by caselaw rule or by statute. *Id.*

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

11 U.S.C. § 505(a)(1). Section 505(a) was derived from Section 2(a)(2A) of the former Bankruptcy Act, 11 U.S.C. § 11(a)(2A). Section 2(a)(2A) was promulgated in 1966 in response to *Arkansas Corp. Comm's v. Thompson*, 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244 (1941), in which the Supreme Court held that Section 64(a)(4) of the 1898 Bankruptcy Act did not empower the bankruptcy courts to redetermine and revise the value of a property for tax purposes when that value had already been determined by a state's quasi-judicial agency.[2] In response to the Supreme Court's decision in *Thompson*, and to remedy the confusion caused by that decision about the bankruptcy court's jurisdiction with respect to taxes, Congress enacted Section 2(a)(2A). *See City of Amarillo v. Eakens*, 399 F.2d 541 (5th Cir.1968). Section 2(a)(2A) gave bankruptcy courts jurisdiction to:

> Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction....

■ When the Bankruptcy Act of 1978 was promulgated, Section 505 replaced Section 2(a)(2A). The legislative history of Section 505 emphasizes that it permits the bankruptcy court to determine the tax liability of a debtor "that has not been contested before or adjudicated by a judicial or administrative tribunal of competent jurisdiction before the bankruptcy case." S.Rep. No. 989, 95th Cong., 2d Sess. 67, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5853. The legislative his-

tory also emphasizes the vitality of *Thompson*. *Id.* We conclude that Section 505 does not deny the bankruptcy court jurisdiction of claims of non-debtors; rather, its purpose is to deny jurisdiction to the bankruptcy court when, prior to bankruptcy, a tax claim has been "contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(1).

To the extent Section 505(a)(1) grants jurisdiction, we do not think Section 505 addresses the situation presented in this case. Section 505 contemplates the normal situation where a tax liability issue in bankruptcy arises with respect to a debtor. Although appellant Philip Quattrone correctly asserts that the language of the section does not expressly limit its application to debtors, Congress' intent clearly was not to create another tax court, and thus the meaning of Section 505 must be determined from the statute as a whole. *Cf. Amalgamated Ins. Fund v. Sheldon Hall Clothing*, 862 F.2d 1020 (3d Cir.1988) (where two provisions of a statute facially conflicted, court examined statute as a whole to determine correct interpretation). This section is contained in a subchapter denoted "Creditors and Claims" which is in a chapter of the bankruptcy code denoted, "Creditors, the Debtor, and the Estate." This context highlights the limited application of Section 505. Further, the other provisions in the subchapter deal with the interrelationship and effect of creditors and their claims on the bankrupt debtor. Given the placement of Section 505, this would be an unusual location to insert a provision granting broad jurisdictional powers. The limited scope of Section 505 is also borne out in the legislative history which states that Section 505(a) permits "determination by the bankruptcy court of any unpaid tax liability *of the debtor.*" S.Rep. No. 989, 95th Cong., 2d Sess. 67, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5853 (emphasis added). Thus, we disagree with appellant that Section 505 authorizes the bankruptcy

---

**2.** Section 64(a)(4) provided, "That, in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court."

court to determine the tax liability of non-debtors.

■ We conclude that the issue of the bankruptcy court's jurisdiction in this case is to be determined solely by 28 U.S.C. § 1334.[3] Since we are determining the bankruptcy court's jurisdiction over a case between two non-debtors, we must examine the "related to" language of Section 1334.

Section 1334 provides, in pertinent part, "Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings ... related to cases under Title 11." Under Section 1334, a civil proceeding is "related to" a bankruptcy proceeding when *"the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original), *quoted in In re Bobroff,* 766 F.2d 797, 802 (3d Cir.1985). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* However, "the mere fact that there may be common issues of fact between a civil proceeding and controversy involving the bankruptcy estate does not bring the matter within the scope of Section [1334]. Judicial economy itself does not justify general jurisdiction." *Id.*

In *Pacor*, we held that a personal injury suit between Higgins and Pacor was not related to the bankruptcy of JohnsManville Corporation (Manville). Higgins filed suit against Pacor claiming personal injuries sustained from exposure to asbestos distributed by Pacor. Pacor then filed a third party claim for indemnification against debtor Manville. The district court ruled that the bankruptcy court had jurisdiction over the Pacor–Manville suit, but not over the Higgins–Pacor suit because it was not

a proceeding related to the Manville bankruptcy. We affirmed, reasoning,

> the outcome of the Higgins–Pacor action would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor.... Even if the Higgins–Pacor dispute is resolved in favor of Higgins (thereby keeping open the possibility of a third party claim), Manville would still be able to relitigate any issue, or adopt any position, in response to a subsequent claim by Pacor. Thus, the bankruptcy estate could not be affected in any way until the Pacor–Manville third party action is actually brought and tried.

*Pacor*, 743 F.2d at 995.

The outcome of the Section 6672 liability suit between Philip Quattrone and the IRS, like the suit between Higgins and Pacor, will in no way affect the debtor's liability to the IRS under Section 6672. Section 6672 imposes liability on "[a]ny person required to collect, truthfully account for, and pay over" taxes who willfully fails to do so. 26 U.S.C. § 6672; *United States v. Vespe*, 868 F.2d 1328, 1332 (3d Cir.1989). There can be more than one responsible person for a given employer. *Vespe*, 868 F.2d at 1332. That another person also may be liable under Section 6672 does not affect the liability of the person presently subject to suit. *Commonwealth National Bank of Dallas v. United States*, 665 F.2d 743 (5th Cir.1982). Section 6672 "imposes joint and several liability on each responsible person, and each responsible person can be held for the total amount of withholding not paid." *Sinder v. United States*, 655 F.2d 729, 732 (6th Cir.1981). Thus, under Section 6672, Philip Quattrone's liability to the IRS is entirely separate and distinct from debtor's liability to the IRS under Section 6672, even though such potential liability stems from the same withholding taxes. Although the policy of the IRS is to not collect more than 100% of the taxes owed, *see United States v. Sotelo*, 436 U.S. 268, 279–80 n. 12, 98 S.Ct. 1795, 1802–03 n. 12, 56 L.Ed.2d 275 (1978),

---

**3.** 28 U.S.C. § 157 allows the district court to refer to the bankruptcy court, cases over which

the district court has jurisdiction pursuant to Section 1334.

each person responsible under Section 6672 is liable for that 100%. Thus, even if Philip Quattrone is held liable under 6672, the debtor, if found liable, will remain liable for 100% of the taxes owed.[4]

We conclude that the action between Philip Quattrone and the IRS to determine Philip's Section 6672 liability to the IRS is not related to debtor's bankruptcy. Therefore, the bankruptcy court does not have jurisdiction over Philip Quattrone's claim.

### IV.

We next address whether debtor, Quattrone Accountants, is liable under Section 6672 as a responsible person who willfully failed to pay over withholding taxes. We hold that it is.

The question of debtor's liability under Section 6672 presents two issues: first, whether debtor is a responsible person; second, whether debtor willfully failed to collect or truthfully account for and pay over such tax. *George v. United States*, 819 F.2d 1008, 1011 (11th Cir.1987). We will first address the responsible person issue.

### A.

■ A responsible person is a person required to collect, truthfully account for or pay over any tax.[5] *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). Responsibility is a matter of status, duty or authority, not knowledge. *Mazo v. United States*, 591 F.2d 1151 (5th Cir.1979). The responsible person need not be a corporate officer. *Adams v. United States*, 504 F.2d 73 (7th Cir.1974). A person is responsible if the person has significant, though not neces-

sarily exclusive, control over the employer's finances. *United States v. Vespe*, 868 F.2d 1328, 1332 (3d Cir.1983). A person has significant control if he has the final or significant word over which bills or creditors get paid. *Commonwealth National Bank of Dallas v. United States*, 665 F.2d 743, 757 (5th Cir.1982). Here, the evidence indicated that debtor had such control over the finances of UDF to become a responsible person.

■ Debtor argues that the bankruptcy court overlooked the uncontradicted testimony of one of the members of UDF's board of directors who stated the Board made the policy decisions and that President Hayes handled the day-to-day decisions. Debtor asserts that the evidence indicates that debtor's position consisted of purely bookkeeping functions. We disagree. A review of the record as a whole supports the bankruptcy court's finding that debtor had significant control over UDF's finances. Debtor had the authority to pay UDF's monthly bills without prior approval. Consistent with this authority, debtor had possession of signature stamps of the treasurer and president of UDF. The only limitation on this authority was that each month debtor had to present to the Board of UDF the bills it had paid for the previous month. Further, debtor provided daily financial advice to UDF and obtained loans for UDF. Debtor also prepared and filed UDF's tax returns. We conclude, therefore, that a person with the amount of control possessed by debtor is a responsible person under Section 6672.

### B.

■ We next address whether debtor willfully failed to truthfully account for

---

**4.** Arguably, because the IRS does not collect more than what it is owed, if Philip Quattrone were found liable under Section 6672 and then actually made payments toward that liability, such payments would decrease the amount debtor actually would owe the IRS. However, the fact remains that debtor is jointly and severally liable for the 100% penalty, and, given this fact combined with the highly contingent nature of Philip Quattrone actually paying a portion of UDF's tax liability, we cannot conclude that a determination of Philip Quattrone's tax liability

under Section 6672 would conceivably have any effect on the bankrupt estate.

**5.** The act defines person as including "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b). Debtor has not challenged its status as a "person" under 26 U.S.C. § 6671(b).

and pay over any taxes. Generally, willfully means a voluntary, conscious and intentional decision to prefer other creditors over the Government. *George v. United States*, 819 F.2d 1008, 1011 (11th Cir.1987); *Howard v. United States*, 711 F.2d 729, 736 (5th Cir.1983). A responsible person acts willfully if he pays other creditors in preference to the IRS knowing that taxes are due. *Wall v. United States*, 592 F.2d 154, 163 (3d Cir.1979). A responsible person also can act willfully if he pays other creditors with reckless disregard for whether taxes have been paid. *United States v. Vespe,* 868 F.2d at 1335.

Here, debtor admits knowing that taxes were not being paid; thus, the question is whether debtor made a voluntary, conscious and intentional decision to prefer other creditors over the IRS. The bankruptcy court found that debtor had such influence with the Board of UDF that had it chosen to, it could have paid the taxes and no one on the Board would have questioned it. The bankruptcy court also found that debtor obtained a loan for UDF specifically to pay UDF's withholding taxes and that while debtor advised the board that the taxes were being paid, debtor used the funds from that loan to pay creditors other than the IRS.[6] Debtor argues that President Hayes instructed debtor to prefer other creditors over the IRS, and therefore, its failure to pay the taxes was not willful. The bankruptcy court, however, apparently rejected this testimony by Philip Quattrone as was its prerogative under 28 U.S.C. § 157(b)(2) and Bankruptcy Rule 8013.[7] *See In re Meyertech Corp.*, 831 F.2d 410 (3d Cir.1987). The findings of the bankruptcy court that debtor had the power to pay over the taxes and failed to do so are not clearly erroneous. Based upon those findings, we hold that the bankruptcy court

correctly concluded that debtor "willfully" failed to pay over the taxes.

## V.

In summary, we hold that the bankruptcy court does not have jurisdiction to determine Philip Quattrone's tax liability and that debtor, Quattrone Accountants, is a responsible person who failed to pay over taxes under Section 6672. We will affirm the judgment of the district court.

---

**6.** Although these funds were not trust funds within the meaning of 26 U.S.C. § 7501, *Slodov v. United States,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978) does not require us to conclude that this act was not willful because, "[w]here there has been no change in control ... responsible persons are subject to a duty to apply any available unencumbered funds to reduc[e] accrued withholding tax liability, whether or not those funds are deemed to be trust

funds within the meaning of Section 7501." *Mazo v. United States,* 591 F.2d 1151, 1154 (5th Cir.1979).

**7.** Rule 8013 provides, in pertinent part, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witness."